In the Matter of the Estate of EDWIN H. HISCOX, Deceased.

Surrogate's Court, New York County, February 10, 1931.

*Vincent Gilroy*, for the residuary legatee.

*Hooker I. Goggeshall*, for Andrew S. Rubin.

*Smith & Bowman*, for the petitioner.

O'BRIEN, S. This is a proceeding for the construction of the will of the above-named testator instituted by William E. Graham, the executor, named therein upon notice to all the parties. The testator died on the 27th of April, 1930, leaving him surviving as his only heir at law and next of kin, his niece, Nettie Mitchell Jennings, who is by the 7th paragraph of his will made his sole residuary legatee. The 3d and 4th paragraphs of the testator's will read as follows:

" *Third*. To my cousin, Isabel W. Dashe, I give and bequeath the sum of Two Thousand Dollars, ($2,000).

" *Fourth*. To my friend, Andrew S. Rubin, I give and bequeath the sum of Ten Thousand Dollars ($10,000); together with all the furniture and furnishings owned by me at my death."

The 7th paragraph of the will provides as follows:

" *Seventh*. All the rest, residue and remainder of the property, of whatsoever name and nature and wheresoever situate, of which I shall be possessed, and to the possession of which I shall be entitled at my death, I give, devise and bequeath to my niece, Nettie Mitchell Jennings."

A hearing was had, considerable testimony taken and briefs submitted. The record shows and it is conceded that at *the time* the testator *executed his will* and at the time of his death his personal property amounted to approximately $10,000, and that the value of his real estate was $100,000, subject to a mortgage of $27,000. The money legacies bequeathed by the 3d and 4th paragraphs of the will amounting to $12,000 exceed the value of the personal property possessed by the testator *at the time he made the will and at the time of his death*. Out of the personal property must be paid the debts and administration expenses which are estimated to be $5,000. There is, therefore, a deficit of personal property out of which to pay the legacies mentioned in the 3d and 4th paragraphs of the will, and the question for the court to determine is, are these legacies to be decreed to be a charge upon the real estate which is devised to the testator's niece by the 7th paragraph of the will. The general rule of construction is that money legacies are to be paid out of the personal property of the testator and are to abate if there is insufficient personal property unless the will by *express terms* directs otherwise or unless there is a clear intent manifested that these legacies are to be charged on the real property which can be gathered from the provisions

of the will or by the extraneous circumstances of the particular case. In this will there is no express direction and as the personal property is the primary fund out of which to pay money legacies, they cannot be charged against the real property unless the court can find in the general context of the will or the extraneous circumstances that it was the intention of the testator to so charge them. I hold that the legacies are not a charge upon the real estate. I base this conclusion (1) on the testimony of Mr. Harold Bowman, the attorney who drew the will. He testified (stenographer's minutes, pp. 43, 44, 45, etc.) that at the time he prepared the will the testator visited his office originally with Mr. Graham, who was an old time friend of the testator. They were associates in business, the testator being the treasurer, and Mr. Graham being the president of the same company, the name of which was not stated. Mr. Graham stated that he had prepared a will for Mr. Hiscox, but he was not a lawyer and did not know how good the will was and he wanted a good will drawn and he said he had prepared a memorandum of what the will was to contain, and he handed to Mr. Bowman this memorandum. The latter prepared the will according to the memorandum. The second time the testator came to the office he read the will and he said " that is all right, Mr. Bowman, that is in accordance with my instruction," but he said, " I am afraid it sounds a good deal better than it is going to be." I said, " what do you mean Mr. Hiscox?" He said: " I do not know that those legacies to Rubin and Miss Dashe are ever going to be paid in full." I looked at him; I said " that is a very astonishing statement for you to make, Mr. Hiscox." He said, " you don't need to smile, when Mr. Graham made my first will and up to three years ago they would have been perfectly good all right. I had more than enough to pay those legacies and leave some over but," he said, " since my illness my expenses have been so heavy I do not know if I have got enough personal property to pay those legacies." " Well," I said, " that is news to me, Mr. Hiscox, shall I change the will?" He said, " no, don't change the will, they can take their chances on getting what I have left them." " They will get a good deal anyway. That will be enough for them." I said, " all right," and the will was executed, and I left — gave him the original and kept a copy." Bowman's testimony continues:

" The Surrogate: Isn't it a fact that it was at the time he actually executed the will he made this forecast of a possibility that they might not get all that was coming to them? The witness: Absolutely; it was about three minutes before he signed the will. As soon as that conversation was finished I called in the other witness

and we signed the will as witnesses. I was one and I think Mr. Wallach, in my employ, was the other witness. That was signed not more than three minutes after he made that statement to me." Q. " Did he say how much personal property he had?" A. " No, he simply said they will get a large part of it anyway and take their chances getting it all."

This testimony is clear, definite and certain as to the instructions of the testator at the time of the execution of the will and outweighs any declarations made subsequently. (2) The testimony of Mr. William L. Mitchell, who was the husband of testator's sister, with whom the testator lived for twenty-five or thirty years, that his daughter, Nettie Mitchell Jennings, the residuary legatee, and " Eddie " were " just like brother and sister after the mother died." " I brought him up since he was a baby, I taught him his business." Such testimony indicates that the testator and his niece were intimate friends and shows the reason for the testator making her the principal legatee. This was family real estate having come to the testator through his brother William from his father and mother and it is fair to assume that the testator desired this property kept intact in the family circle and as his niece, the residuary legatee, was his only next of kin, to accomplish this properly gave it to her. (3) That this was his intention is further emphasized by the fact that he gave a deed of the property to the residuary legatee during his lifetime. Mitchell further testified: " Q. Did he ever say anything about what he was going to do with that building? A. Yes, the same day he gave the deed to the property to my daughter, he told her to keep it, that it was her property, it was in the family and it would always be in the family and he hoped we would always keep it there. Q. Do you recall when the last statement of that character was made by Mr. ——— A. Within two weeks of his death. Q. Was it made — do you recall if it was made at any time right near the 13th — during the month of March, prior to his death? A. He told me that before I went to Florida in January. When I came back, just about the 10th or 11th of March, I think this will was made, you say the 13th? Q. Around the 13th? A. Then within a few days of that we had a talk together and he told me then about it, then also the week prior to his death."

(4) Isabel W. Dashe, the legatee who received the sum of $2,000, was only a cousin of the intestate and there is no proof of how often he saw her or as to friendly relationships that might have existed between them. The only other legatee, Andrew S. Rubin, is a stranger to the blood though concededly an intimate friend and business associate, and while the testator desired to remember

him in his will substantially, it cannot be said that he intended by so doing to charge the payment of the legacy given to Mr. Rubin against the real estate which he gave to his niece. I hold that the presumptions are against any intention on the part of the testator to make the general legacies a charge upon the real estate. Submit decree on notice construing the will accordingly.